AVERY v. BOSTON SAFE–DEPOSIT & TRUST CO.

(Circuit Court, D. Massachusetts. January 30, 1896.)

No. 416.

1. CORPORATIONS—DISSOLUTION—RIGHT OF RECEIVER TO SUE.
    A receiver of the assets of a corporation, appointed, upon its dissolution, as its successor, by the statutes and the courts of the state where it was organized, can sue in a federal court sitting in another state upon rights of action belonging to such corporation.

2. COURTS—COMITY—POSSESSION OF SUBJECT-MATTER.
    Two suits were brought in a Massachusetts court by citizens of Massachusetts against the C. Co., a New York corporation, in each of which the B. Co., a Massachusetts corporation indebted to the C. Co., was summoned as trustee, and the funds of the C. Co. in its hands attached. The B. Co. appeared and answered, disclosing property of the C. Co. The C. Co. was not served, and did not appear. After the commencement of the trustee suits, the C. Co. was dissolved by a decree of a New York court, and a receiver of its assets appointed, who was summoned into the trustee suits, but did not appear. After his appointment, the receiver demanded from the B. Co. the debt due to the C. Co., and, upon refusal of payment, began suit in the United States circuit court in Massachusetts to recover it. The state court in which the trustee suits were pending had power to convert either of them into a proceeding in equity in which the rights of all parties could be adjusted. *Held*, that the federal court, out of comity to the state court, which had possession of the fund in controversy, would suspend action, in the suit brought by the receiver, until the state court had disposed of the suits pending in it or at least had had full opportunity of indicating its purpose in reference thereto.

Fish, Richardson & Storrow, Robert F. Herrick, and Guy Cunningham, for plaintiff.

Solomon Lincoln and Sherman L. Whipple, for defendant.

PUTNAM, Circuit Judge. This is an action at common law, and some of the principles which the courts have applied to suits in equity need to be carefully discriminated. The plaintiff is described as the receiver of a manufacturing corporation created under the statutes of New York, and known as the "Canoga Woolen Company." The declaration alleges that by due legal proceedings in the courts of New York the corporation has been dissolved, and it proceeds:

"And the said Avery further says that, in accordance with the said charter of the said Canoga Woolen Company and the statutes of the state of New York relating to corporations, which govern and are a part of said charter,

he became by the above proceedings the temporary receiver, and became, and is now, permanent receiver of the said Canoga Woolen Company, and by force of the said charter and statutes and the said proceedings, from the said first day of December, A. D., 1894, the title to all the property and debts due to the said corporation became vested in him as the legal and statutory successor of the said corporation, and he became entitled to collect the same for the benefit of the creditors of said corporation, the Canoga Woolen Company; that upon the said first day of December, A. D. 1894, there was due to the said Canoga Woolen Company the sum of seventeen thousand six hundred ninety-five dollars and fifty-seven cents from" the defendant corporation.

The action was brought to recover this indebtedness. The principal defense is that the plaintiff cannot be recognized in this district for the purpose of maintaining this suit. It is well settled that this court can take judicial cognizance of the laws of New York, and, therefore, it must do so. That, however, the corporation has been dissolved, is not denied, and therefore we are not called on to scrutinize the statutes of New York in order to ascertain whether there is not sufficient vitality left to enable a suit to be maintained in the name of the corporation for the indebtedness which the case admits to exist. We are justified in assuming that this cannot be done, and that we must apply the following from Pendleton v. Russell, 144 U. S. 640, 644, 645, 12 Sup. Ct. 743:

"Looking at the judgment of the circuit court of the United States, we are satisfied that the ruling of the court of appeals was correct. That judgment purports to be against the insurance company, but that company, at the time, had no legal existence. It had been dissolved, and franchises, rights, and privileges declared forfeited, by a decree of the supreme court of New York in a proceeding brought by the attorney general of the state in the name of the people, and a receiver appointed of the effects of the corporation. The judgment was therefore no more valid against a nonexisting corporation than it would have been if rendered for a like amount against a dead man. The receiver was not substituted in the place of the dissolved corporation. No process or citation was issued by that court to bring him before it, nor any proceeding taken for that purpose. Nor would such a proceeding have had any effect, for, the corporation having expired, the suit itself had abated."

The result is that no one can maintain a suit at common law for this indebtedness, unless the plaintiff can do it. He is styled a receiver; but he is in substance a trustee, appointed by the statutes and the courts to collect and distribute the assets of the corporation, and vested with the title to them. He is the successor of the corporation, so far as the statutes and the courts can make him such. If he were a mere receiver, in the ordinary sense of the word, the corporation would survive, and he could sue in a common-law court only in its name. This distinction must be kept in view, and was elaborately expounded in Booth v. Clark, 17 How. 322. The plaintiff resembles, in some respects, a new corporation into which an old one has been merged. In Relfe v. Rundle, 103 U. S. 222, 225, a receiver of the same character was described as the successor of the corporation, and it was there said that he was the corporation itself, for all the purposes of winding up its affairs.

The general rules applicable to the collection and distribution of the assets of dissolved corporations were fully stated in Curran v. Arkansas, 15 How. 304. It was there explained that such assets are not lost to the creditors and stockholders by the dissolution, but that

the appropriate remedy, and, independently of statute, the only one, is the administration of them as a trust by a court of equity. In that case a bill for that purpose brought by a creditor was sustained. In Greenwood v. Railroad Co., 105 U. S. 13, 19, it was said that, when some special remedy is not provided, the equity courts will enforce existing rights by the means within their power. This rule permits the entertaining of a bill filed by any one having even a remote or contingent interest in the assets. Of course, this would include a receiver appointed in a foreign jurisdiction of domicile, though the regular course would be a quasi ancillary receivership, with due provision for the protection of domestic creditors and stockholders. For, as said in Booth v. Clark, 17 How., at page 337, courts "will not subject their citizens to the inconvenience of seeking their dividends abroad, when they have the means to satisfy them under their own control." All this relates to proceedings in equity. But the case at bar involves common-law rights, and permits no equitable discretion on the part of the court. If this suit is maintained, it must be because the corporation is wholly dissolved, and because the plaintiff is its successor. That, under the circumstances, the plaintiff's rights are pure common-law rights, and that this suit can be maintained in his name, Relfe v. Rundle, ubi supra, seems to go far towards supporting. However, the court does not consider it necessary that it should work out its own conclusion on these questions, or go beyond pointing out what they are, because in the circuit court for the district of Maine, in a case not officially reported, and but lately decided,[1] after full argument and due consideration, under conditions in all substantial respects like those at bar, Judge Webb laid down a rule which supports this suit; and, under the circumstances, the court here should follow that decision, whatever its own views might be.

There are, however, some further facts which affect the discretion which this court must properly exercise as a court of law, and which lie in a different field from that equitable discretion which we have been considering. It is agreed in the case as follows:

"Upon the eleventh day of December, A. D. 1894, prior to the order of the supreme court of New York dissolving the said Canoga Woolen Company, and before any demand had been made upon the Boston Safe-Deposit and Trust Company by the plaintiff in this action, and before it had received any notice of his appointment, or of any proceedings instituted for the purpose of having a receiver appointed or the corporation dissolved, * * * two suits were brought in the superior court for the county of Suffolk, and commonwealth of Massachusetts, against the said Canoga Woolen Company, * * * in which suits said Boston Safe-Deposit and Trust Company was summoned as trustee upon the said eleventh day of December, 1894. The plaintiffs in the first writ were Jacob F. Brown and Samuel G. Adams, both citizens and residents of Boston, in said county of Suffolk, and commonwealth of Massachusetts, and plaintiff in the second writ was the Atlas National Bank, a banking corporation duly organized under the laws of the United States, and having its principal place of business in said Boston. The amount of the attachment in the said suits was in the aggregate the sum of $26,000. The writs in these suits were returnable on January 7, 1895, and were duly entered upon that day, and are now pending in said court. The Boston Safe-Deposit and Trust

---

[1] Not to be reported. No opinion filed.

Company has appeared in said suits and answered, disclosing that it had at the time of said attachments the sum of $17,695.57 in its hands belonging to the said Canoga Woolen Company. * * * The Canoga Woolen Company has never at any time had a place of business in the commonwealth of Massachusetts, though Pierrepont Wise, who was its treasurer on the said November 17, and thereafter until the fifteenth day of December, A. D. 1894, after the service of the trustee process as above referred to, except in so far as affected by the proceedings in New York, was at the time of the service of said trustee process a resident of West Newton, Mass., and no service has ever been made upon it, nor has it ever appeared in the said actions. Charles I. Avery, the plaintiff in this action, upon motion of the plaintiffs in the said actions brought in the superior court of Massachusetts, was summoned as claimant, and a copy of this summons was served upon Messrs. Fish, Richardson & Storrow, of Boston, Mass., attorneys at law, and a certified copy of said summons was delivered to the said Charles I. Avery at Auburn, N. Y., but the said Charles I. Avery has not appeared in said proceedings, and the time for appearance has passed. A motion has been made by the plaintiffs in each of the two actions in Massachusetts that the trustee be charged upon its answer, but the said superior court has refused either to allow or disallow the said motion for the present. Upon the nineteenth day of December, A. D. 1894, after the service of said trustee writs, said Charles I. Avery duly demanded payment of the said sum of $17,695.57 from the defendant, the Boston Safe-Deposit and Trust Company, and the Boston Safe-Deposit and Trust Company refused and still refuses to pay the said sum or any part thereof. No technical questions of pleading are to be raised as to the pleadings of either party. If on these facts the Boston Safe-Deposit and Trust Company is bound to pay the said sum, or any sum to the said Charles I. Avery, receiver, notwithstanding the said trustee process, then judgment is to be entered for the plaintiff for such sum as is proper on these facts, otherwise judgment is to be entered for the defendant."

The court has stricken from this agreement a statement of the proceedings in New York prior to the order dissolving the corporation, because it regards them as unimportant with reference to the questions at issue. The writ in the suit at bar is dated January 3, 1895, which is subsequent to the bringing of the trustee suits named, and after service on the trustee, though before the return day of the writs in those proceedings. The plaintiff at bar was summoned into the trustee suits under the authority of the public statutes of Massachusetts (chapter 183, § 35 et seq.). Also, pursuant to chapter 167, § 43, Pub. St., either of the suits in the superior court may, perhaps, be converted into a proceeding in equity. Therefore, not only had the state court attached the fund in controversy in the only way in which it is attachable, before this suit was brought, but it has jurisdiction to determine the rights of the present plaintiff as between him and the plaintiffs in the trustee suits, and also to investigate and determine whether it may not convert the trustee suits into such equity proceedings as will give the relief awarded in Curran v. Arkansas, 15 How. 304, already referred to. For, notwithstanding whatever effect may be given to Relfe v. Rundle, ubi supra, that case does not dispose of the question whether the powers of the equity courts to supersede proceedings at law, or to anticipate them and apply the assets of dissolved foreign corporations on equitable principles, do not remain. All these matters are proper subjects for examination by the court where the trustee suits are pending and it has, or can have, before it all the parties necessary for the disposition of them in a safe and intelligent manner. Non constat there may

be laid before it such further facts as will enable it to determine that the Canoga Woolen Company still has life, though under qualified conditions, so that Folger v. Insurance Co., 99 Mass. 267, and Hunt v. Insurance Co., 55 Me. 290, and other cases of the same class, would apply. It may be that none of the decisions of the supreme court—most, if not all, of which are explained in Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, and Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019—go to the extent of absolutely barring this suit; but the spirit underlying them ought not to be disregarded. That was well expressed by Judge Pardee, speaking for the court of appeals for the Fifth circuit, in Adams v. Trust Co., 15 C. C. A. 1, 66 Fed. 617, 620, as follows:

"While state and national tribunals are independent and separate, neither can impede or arrest any action the other may take, within the limits of its jurisdiction, for the satisfaction of its judgments and decrees."

We are of the opinion, therefore, that the proper comity which should exist between federal courts and those of the state exercising concurrent jurisdiction, and our duty not to jeopardize the defendant unnecessarily through any hazard of conflicting judicial decisions, prohibit a judgment for the plaintiff until the court having jurisdiction of the trustee suits has disposed of them, or, at least, has had full opportunity of indicating its purposes in reference thereto. On the other hand, we are reluctant to interpose anything in the nature of a judicial discretion in such way as to bar the plaintiff indefinitely from obtaining the judgment of the court of appeals on his alleged rights. Such would be the effect if we should merely order a continuance. The agreed statement submitting this case provides that if the defendant is bound to pay the plaintiff, notwithstanding the pendency of the trustee suits, judgment is to be entered for the plaintiff; otherwise for the defendant. The views expressed in this opinion prevent the court from now entering a judgment for the plaintiff, but we can relieve him from the strict letter of the alternative. It is ordered that judgment will be entered for the defendant, unless within one calendar month the plaintiff elects that the case be continued until further order of the court.