## WIGTON v. BOSLE

(Circuit Court, E. D. Pennsylvania. May 28, 1900.)

### No. 36.

1. Nonsuit—Motion to Set Aside—Mistake of Plaintiff.
    Where, in an action to enforce a liability under a foreign statute, plaintiff rests his case upon a particular statute, to which the attention of the court is called, and the cause is tried upon the theory of defendant's liability thereunder, and results in a nonsuit, plaintiff is not entitled to have the nonsuit set aside for the reason that there is another statute of the foreign state, which, if it had been brought to the attention of the court in due season, would have avoided such judgment.

2. Banks—Stockholder's Individual Liability—Receivers—Pleading—Variance.
    Where, in an action by a receiver to enforce a stockholder's liability under a foreign statute, the declaration alleges that under such statute shareholders are individually and severally liable "to the creditors" of the corporation, the receiver cannot recover, though the statute makes such liability an asset of the corporation, because of the material variance between the pleading and proof.

3. Same—Right of Action—Assessment Ordered by Court of Foreign Jurisdiction.
    The individual liability of the shareholders of a bank to the creditors of the corporation, being conditioned by the statute of Iowa upon the bank having become insolvent, and upon the insufficiency of its assets to pay its debts, and being limited to the stockholder's share of the deficiency only, the receiver of a bank, appointed under the general powers of a court in Iowa, cannot maintain an action in a foreign jurisdiction against a shareholder, for the amount of an assessment upon stock directed to be made by the court in Iowa, in a proceeding to which the shareholder was not a party, and to which he did not appear, and to which he could not have been required to appear, because of his being beyond the jurisdiction of the court.

4. Receivers—Powers—Cannot Maintain Action in Foreign Jurisdiction.
    The receiver of a corporation appointed by a court of competent jurisdiction in one of the states cannot maintain an action in another state for the recovery of a demand due the estate of which he is receiver.

**5. SAME—COMITY.**

  Even if the rule which permits the receiver of a corporation to sue in a foreign jurisdiction, as an act of comity, be recognized by the federal courts, it will not be extended to a demand for a stockholder's liability, under an assessment ordered by the court in which the receiver was appointed, in proceedings to which the stockholder was not a party.

**6. FOREIGN JUDGMENT—EVIDENCE—NONSUIT.**

  Where, in an action against a shareholder for the amount of an assessment upon the stock of a corporation made pursuant to an order of court in the matter of the receivership of such corporation in a foreign jurisdiction, a complete copy of the proceedings in the case wherein such order was made is not produced upon the trial, plaintiff will be nonsuited.

A. T. Jenkins, Charles Chauncey, and T. F. Bevington, for plaintiff.

Richard C. Dale, for defendant.

DALLAS, Circuit Judge. This action was brought to enforce a liability to which the defendant is alleged to be subject as a stockholder of the Iowa Savings Bank, by virtue of the laws of the state of Iowa. At the outset of the trial the counsel for the plaintiff stated:

"I understand that the court takes judicial notice in such cases as this of the statutes of the state, and I therefore want to call attention to the laws of the state of Iowa (Miller's Code, July 4, 1888, p. 606)," etc.

The learned counsel were unquestionably right in understanding that the courts of the United States take judicial notice of the public laws of each of the several states, when any such law is properly applicable to a case on trial in a federal court; but they were also right in supposing that the trial judge was in fact unacquainted with the statutes of Iowa, and that therefore the burden was upon the plaintiff to supply the needful information. He, however, presented only the one statutory provision above mentioned, and as that provision is, as is now conceded, inapplicable to this action, the judgment of nonsuit was, as the case then appeared, clearly right. Yet I am asked to strike off that judgment, for the reason that there is another Iowa statute which it is contended would, if it had been brought to the attention of the court in due season, have precluded its entry; but I have not been convinced that this additional statute should be considered upon this motion. The action of the court was not founded upon a refusal to take judicial notice of anything which it should have noticed, but upon its compliance with the plaintiff's request that it should notice a certain particular statute, which he asserted to be the pertinent one; and consequently the case, from beginning to end, was tried upon that supposition. Under these circumstances, the plaintiff, if the case had gone to the jury, would not have been entitled to have a verdict against him set aside, and, a fortiori, he is not entitled to be relieved from the requirement, which a nonsuit imposes, of paying the costs of this action, and then bringing a new one, if he shall be so advised. Steph. Dig. Ev. art. 59; Tayl. Ev. § 21, and cases there cited. But, even if the statutory provision which is now relied on had been produced on the trial, I am of opinion that the entry of the nonsuit would have been proper. That provision is as follows:

"Shareholders in banks organized under the provisions of this act shall be individually and severally liable to the creditors of the corporation of which they are shareholders over and above the amount of stock by them held, to an amount equal to their respective shares so held, for all its liabilities accruing while they remain shareholders, and no transfer of stock shall affect such liability for the period of six months thereafter, and should any bank become insolvent and its assets be found insufficient to pay its debts and liabilities, its shareholders may, to that extent, be compelled to pay such deficiency, in proportion to the amount of stock owned by each."

I assume, without deciding, that the effect of this provision, as a whole, is to make the liability which it creates an asset of the corporation. But the plaintiff's declaration is inconsistent with this assumption. It alleges that the laws of the state of Iowa provide "that shareholders are individually and severally liable to the creditors of the corporation," and, if this were really the effect of this statute, the receiver could not, aside from any other objection, maintain this action. Mechanics' Sav. Bank v. Fidelity Insurance Trust & Safe-Deposit Co. (C. C.) 87 Fed. 113; Id., 38 C. C. A. 193, 97 Fed. 297; Whitman v. Bank, 20 Sup. Ct. 477, Adv. S. U. S. 477, 44 L. Ed. ——. Hence there seems to be a variance between the pleading and the proof, which cannot but be material, since it is only by assuming that the proof establishes a right not declared upon that any cause of action can be said to have been shown.

There is, however, more substantial ground for upholding this nonsuit. The plaintiff bases his right to sue as receiver upon his allegation that a court of the state of Iowa appointed him receiver of the Iowa Savings Bank, of that state, "inter alia, to collect and receive all its assets," and thereafter ordered and made an assessment upon the par value of the stock of each shareholder, and authorized and directed him (the receiver) "to proceed at once to use all legal means to collect the assessment by suit or otherwise." The gravamen of the complaint is that "the defendant has failed and refused to pay the amount of the assessment," and the first question is, was he bound by the order which made the assessment and fixed its amount? The liability imposed by the statute is conditional upon the bank having become insolvent, and its having been found that its assets are insufficient to pay its debts and liabilities; and the liability is not for any specified sum, but is for "such deficiency," whatever it may be, and attaches to the several shareholders in proportion to the amount of stock owned by each. Manifestly, therefore, before a common-law action can be maintained for recovery of a specific sum, there must have been some legitimate ascertainment of the insolvency of the bank, of the insufficiency of its assets to pay its debts and liabilities, and also of each shareholder's proportion of such deficiency. In my opinion, none of these matters has been ascertained or determined in any manner which can affect this defendant. The assessment order which is relied upon was made in a suit to which he was not a party, and in which he did not appear, nor could have been required to appear. It was made upon the report of a receiver, who was appointed in the exercise of the general powers of the Iowa court and not in pursuance of any statute of that state vesting in him the legal title to the corporate assets. If such

had been the case, or if the proceeding had been one for the enforcement of unpaid subscriptions to stock, a different question might have been presented; but to hold any man bound by an order such as is now claimed to be conclusive upon this defendant, although he never had his day in court to object to it, would be, as it seems to me, to disregard a plain and fundamental principle of justice. Elkhart Nat. Bank v. Northwestern Guaranty Loan Co., 30 C. C. A. 632, 87 Fed. 252.

Furthermore, I am of opinion that this receiver has no right to maintain the present action in this jurisdiction. In Hale v. Hardon (C. C.) 89 Fed. 283; Id., 37 C. C. A. 240, 95 Fed. 747,—the cases of Booth v. Clark, 17 How. 322, 15 L. Ed. 164, and Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337, and others, were very carefully reviewed. In the circuit court Judge Putnam decided against the right of such a receiver to sue. In the court of appeals the majority of the court (Judge Colt dissenting) held to the contrary. The result was that Judge Putnam's judgment was reversed, but, under the circumstances, I have thought it proper to give the same consideration to the opinion of Judge Putnam and of Judge Colt as to that of Judge Aldrich, upon which the judgment of the court of appeals was founded; and I am constrained to say that, both upon reason and authority, the opinion which was delivered in the circuit court and the dissenting opinion in the court of appeals accord with my own judgment, and I therefore follow them. The full discussion of the subject presented in the case just mentioned renders it unnecessary for me to enlarge upon it, but I may add that my own independent and careful examination of the point has satisfied me with the correctness of the statement contained in High, Rec. §§ 239, 241, viz.:

"Upon the question of the territorial extent of a receiver's jurisdiction and powers, for the purpose of instituting actions connected with his receivership, the prevailing doctrine, established by the supreme court of the United States, and sustained by the weight of authority in various states, is that the receiver has no extraterritorial jurisdiction or power of official action, and cannot go into a foreign state or jurisdiction and there institute a suit for the recovery of demands due the person or estate subject to his receivership. His functions and powers, for the purposes of litigation, are held to be limited to the courts of the state within which he was appointed, and the principles of comity between nations and states, which recognize the judicial decisions of one tribunal as conclusive in another, do not apply to such a case, and will not warrant a receiver in bringing an action in a foreign court or jurisdiction. * * * While, as is thus seen, the courts have generally denied the receiver's extraterritorial right of action as a question of strict right, yet it has sometimes been recognized as a matter of comity. Thus, it has been held that receivers of a foreign corporation, appointed in other states, might sue in New York in their official capacity in cases where no detriment would result to citizens of the latter state; the privilege of thus suing being regarded as based rather upon courtesy than upon strict right, and the courts declining to extend their comity so far as to work detriment to citizens of their own state who have been induced to give credit to the foreign corporation."

Whether in any case this courtesy or comity should, in view of the decisions of the supreme court of the United States, be recognized by the federal courts, need not be decided; for I think that the case now under consideration, even if such comity might in any instance be accorded, is not one in which it should be exercised.

While I have deemed it expedient to express·my views upon the matters heretofore discussed, I have not overlooked the fact that the copy of the Iowa record which was offered on the trial, and provisionally admitted, was not a "complete copy," and therefore, it would seem, was fatally defective. See opinion of McPherson, J., in Tompkins v. Craig (decided at present term of this court) 102 Fed. ,69. The plaintiff's motion to strike off the judgment of nonsuit is denied.